Filed 11/4/21  P. v. Yanez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075260 |
| v. | (Super.Ct.No. INF1800112) |
| CRISTIAN SEAN YANEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James T. Latting and Dean Benjamini, Judges.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Amanda Lloyd and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Cristian Sean Yanez was convicted of assault with a firearm, attempted criminal threats, and other crimes. He contends on appeal that certain evidence was wrongfully admitted. We find no error and affirm.[1]

## I. BACKGROUND

The charged crimes occurred in three incidents over the span of two nights.

### A. *Neil's Lounge*

On January 7, 2018, Yanez and codefendant Joel Vargas (who is not a party to this appeal) entered Neil's Lounge in Indio. About five minutes later, an altercation broke out between Yanez and Vargas on the one hand and a group of other patrons on the other. Yanez and Vargas were members of the Jackson Terrace gang, and the others were members of the rival North Side Indio gang.

When bar employees escorted the groups out, Yanez stated something like "How do you want to die today?" to one of the employees. Yanez also repeatedly stated something to the effect of "Who's going to die tonight?" While in the parking lot, Yanez opened the front passenger door to his Dodge Charger and grabbed an object, after which Vargas told Yanez to put the object away. Witnesses believed the object was likely a gun, but they were not sure. Yanez began driving away, with Vargas in the passenger seat, but soon made a U-turn back to the bar and fired one or two shots in the air.

---

[1] Undesignated statutory references are to the Penal Code.

*B. Signature Party Rentals*

Yanez and Vargas returned to Neil's Lounge a week later. A woman with them had had drinks and did not want to drive home, so Vargas drove her in her white SUV while Yanez followed in his car.

At approximately 9:45 p.m., an employee at Signature Party Rentals in Indio saw two suspicious cars parked near the business and went to the parking lot to move his car inside. As the employee went to his car, a white SUV drove away, while the other car, a Dodge Charger, drove up to the employee. After a brief exchange, during which the man in the Dodge Charger asked if there were "[a]ny problems," the Dodge Charger left, and the employee moved his car. The employee then heard approximately six gunshots, four of which hit his vehicle. The employee later identified Yanez from a photographic lineup as the man in the Dodge Charger.

*C. Palo Verde Apartments*

Approximately half an hour after the Signature Party Rentals incident, a vehicle approached three teenagers in front of the Palo Verde Apartments in Indio and a man began asking where they were from. The teenagers understood the question as asking whether they were part of a gang. The teenagers responded, "We don't bang." One of the two men in the vehicle then got out, and while holding a handgun, demanded that the teenagers say their names and "Fuck 44" or "Fuck North Side," and they complied.

The teenagers then began walking away, and the man hit one of the teenagers in the back of the head with the handgun. The man told the teenagers to keep walking, got

in his car, and, as the vehicle was leaving, fired a single shot toward the teenagers, hitting one of the teenagers in the leg. Someone in the car was then heard saying "JT."

*D. Investigation and Trial*

During his interrogation, Yanez admitted that he had a "personal beef" with someone at Neil's Lounge on January 7 and that he fired the gun from his car that night. Yanez also admitted that he fired the shots at Signature Party Rentals as well as the shot at Palo Verde Apartments.

Yanez was charged with eight counts: for the Neil's Lounge incident, criminal threats (§ 422; count 7) and grossly negligent shooting (§ 246.3, subd. (a); count 8); for the Signature Party Rentals incident, assault with a firearm (§ 245, subd. (a)(2); count 5) and shooting at a vehicle (§ 246; count 6); and for the Palo Verde Apartments incident, three counts of assault with a firearm (§ 245, subd. (a)(2); counts 1-3) and one count of shooting from a vehicle (§ 26100, subd. (c); count 4). A number of enhancements were alleged as well, including gang enhancements (§ 186.22, subd. (b)(1)) for the counts from the Palo Verde Apartments incident.

At trial, an expert in criminal street gangs testified that Jackson Terrace is a gang located in the Indio area. The expert stated that one of the "biggest rivals" of Jackson Terrace is the North Side Indio gang, and in January 2018 there was a "huge feud going on" between the two gangs. A second expert in criminal street gangs opined that Yanez and Vargas were active members of Jackson Terrace, that the patrons Yanez and Vargas

confronted at Neil's Lounge were members of the North Side Indio gang, and that the Palo Verde Apartments incident was done for the benefit of Jackson Terrace.

The jury acquitted Yanez on count 3 and hung on the lesser offense of simple assault, acquitted on count 7 and found him guilty of the lesser offense of attempted criminal threats, and hung on count 8. The jury found Yanez guilty on all other counts as well as the gang enhancements attached to counts 1, 2, and 4. Pursuant to a stipulated sentence, the trial court sentenced Yanez to 21 years in prison.[2]

## II. DISCUSSION

On appeal, Yanez contends that the erroneous admission of two categories of evidence requires reversal, whether each error is considered individually or cumulatively. The first category is evidence relating to a prior incident from September 2017 involving Yanez and Vargas. The second category is evidence identifying the other individuals at Neil's Lounge on January 7 as North Side Indio gang members. We find no error.

### A. September 2017 Incident

In September 2017, Yanez was driving his Dodge Charger with Vargas and another passenger when they were pulled over for vehicle and driving violations. The officer noticed open beers inside the vehicle, and once other officers arrived on the scene, the officers searched Yanez's vehicle. The search revealed two loaded pistols,

---

[2] In addition to the counts and enhancements already mentioned, the jury found true personal use of a firearm allegations (§ 12022.5, subd. (a)) on counts 1, 2, and 5, and a personal infliction of great bodily injury allegation (§ 12022.7, subd. (a)) on count 1.

As part of the stipulated sentence, the People dismissed counts 3 and 8.

ammunition, an empty ammunition box, and an expended shell casing.  One of the pistols was located underneath the front passenger seat.  Yanez contends on appeal, as he did at trial, that none of the evidence of this incident should have been admitted.

"Character evidence, sometimes described as evidence of propensity or disposition to engage in a specific conduct, is generally inadmissible to prove a person's conduct on a specified occasion.  (Evid. Code, § 1101, subd. (a).)  Evidence that a person committed a crime, civil wrong, or other act may be admitted, however, not to prove a person's predisposition to commit such an act, but rather to prove some other material fact, such as that person's intent or identity.  (*Id.* § 1101, subd. (b).)  We review the trial court's decision whether to admit evidence, including evidence of the commission of other crimes, for abuse of discretion."  (*People v. Harris* (2013) 57 Cal.4th 804, 841.)[3]

We agree with the People that evidence of the September 2017 incident was relevant to show that the object Yanez retrieved from his car while being asked to leave Neil's Lounge was a gun, which in turn bears on whether he intended his statements (such as "Who's going to die tonight?") to be understood as threats.  Witnesses at Neil's

---

[3] The issue is often framed as the admission of evidence of uncharged crimes. (See, e.g., *People v. Clark* (2021) 62 Cal.App.5th 939, 957.)  Although charges stemming from this September 2017 incident were apparently brought against Yanez (according to his opening brief on appeal), this fact is unimportant, as we ask whether the other acts were charged in the case at bar, not whether charges were ever brought for the other acts. (See *People v. Kipp* (1998) 18 Cal.4th 349, 369 ["Evidence that a defendant has committed crimes other than those *currently charged* is not admissible to prove that the defendant is a person of bad character or has a criminal disposition"], italics added; CALCRIM No. 375; cf. *People v. Leon* (2015) 61 Cal.4th 569, 597 ["Cases sometimes describe Evidence Code section 1101(b) evidence as 'prior offenses' or 'prior bad acts.' Both shorthand formulations are imprecise"].)

Lounge testified that they saw Yanez open the front passenger door to his car. None of those witnesses, however, were able to clearly identify whether the object Yanez then retrieved from his car was a gun. Additional evidence tending to show that the object was indeed a gun was relevant to support the prosecution's contention that Yanez intended to make a threat. (See *People v. Toledo* (2001) 26 Cal.4th 221, 228 [criminal threat requires "that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out"].) Evidence showing that just four months earlier Yanez had been pulled over in the same vehicle with a loaded pistol under the front passenger seat fit the bill.

In contending otherwise, Yanez notes that the Neil's Lounge incident involved firearm use, whereas the September 2017 incident involved mere possession. As well, Yanez states that there was nothing unlawful about his firearm possession in September 2017. However, neither of these points makes a difference. Even if we were to accept these contentions as true, the fact remains that the September 2017 incident was relevant evidence of a material issue for one of Yanez's charges.

"Even if evidence of the uncharged conduct is sufficiently similar to the charged crimes to be relevant for a nonpropensity purpose, the trial court must next determine whether the evidence's probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*People v. Chhoun* (2021) 11 Cal.5th 1, 26, citing Evid. Code, § 352.)

7

The trial court properly exercised its discretion under Evidence Code section 352. The evidence was significant and not merely cumulative. Even though other evidence also helped show that there was a gun in Yanez's car (such as the evidence relating to the shots fired from his car), the September 2017 incident made it more probable that the object Yanez drew from the front passenger door—an object witnesses could not identify—was a gun; there had been a gun stored underneath the front passenger seat four months earlier. Moreover, there was no substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. "'"In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.'"' [Citation.] '"'[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case.'"' [Citation.] The 'prejudice' which [Evidence Code] section 352 seeks to avoid is that which "'"'uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*.'"'" (*People v. Cage* (2015) 62 Cal.4th 256, 275.) Here, nothing about the September 2017 incident would uniquely tend to evoke an emotional bias against Yanez, and the effect the evidence had on the issues was significant. Accordingly, we find no error in the admission of the September 2017 incident.

*B. North Side Indio Evidence*

During trial, while one of the criminal street gang experts was on the stand, the People sought to admit into evidence a mugshot of Jason Rosas, a member of the North Side Indio gang and part of the group of those gang members at Neil's Lounge on

January 7.  Yanez objected.  During a sidebar conference, Yanez noted that the questioning was about the Neil's Lounge incident but that the only gang allegations alleged related to the Palo Verde Apartments incident.  He continued:  "And the next exhibit is the gentleman referred to as Grizzly.  So I'd object to the relevance of more and more of these mugshot photos and all this stuff related to things where there's not gang allegations charged."  The People countered that the evidence was relevant to show why Yanez and Vargas got into a confrontation, got kicked out of the bar, and "through their frustration" fired shots from their car.  The People also noted that the evidence would be relevant to show Yanez's and Vargas's allegiances to Jackson Terrace, North Side Indio's rival gang.  On appeal, Yanez contends that the evidence was erroneously admitted.

To the extent Yanez objected to "all this stuff related to things" not directly involving gang allegations, we deem the issue forfeited.  (See *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1676 [issue not preserved for appeal where "vague 'running' or 'standing' objection . . . was not 'directed to a particular, identifiable body of evidence'"].)  Like his statement at trial, Yanez's references in his appellate briefs to "gang evidence in connection with the Neil's lounge incident" and "other evidence" regarding the North Side Indio gang members at Neil's Lounge are simply too vague.

The objections preserved for appeal—that is, those pertaining to Rosas's and Aaron Howard's ("Grizzly's") mugshots—were correctly overruled.  Howard was with Rosas at Neil's Lounge.  Howard's mugshot included his tattoos, which in turn included

9

symbols that the expert stated were common signs and symbols of the North Side Indio gang. As the People noted at trial, the mugshots were relevant to show, first, why Yanez would have gotten so upset as to make threats and fire his pistol, and second, the extent of Yanez's allegiance to Jackson Terrace.[4]

Additionally, the mugshots were not excludable under Evidence Code section 352, as we find nothing (and Yanez offers nothing) about them that would have created undue prejudice, confused the issues, or misled the jury. We find no error in the trial court's admission of this evidence.

Because we have found no error, we reject Yanez's claim of cumulative error, as there is nothing to accumulate.

### III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

SLOUGH_____
Acting P. J.

MENETREZ_____
J.

---

[4] Yanez does not contend that the expert's statements that Rosas and Howard were North Side Indio gang members were based solely on the mugshots. Rosas was identified as a North Side Indio gang member before the mugshots were offered into evidence, and the expert described being familiar with Howard personally, including the expert's interventions to "get [Howard] away from the gang lifestyle."